MARIE FYLLING, Formerly Marie Mork, Respondent, v. OLE MORK, Appellant.

(176 N. W. 914.)

**Judgment — vacation of judgment — when granted.**

In an application to vacate a judgment, the district court entered an order, denying it. *Held*, for the reasons stated in the opinion, that the denial of such application constituted, in this case, an abuse of discretion.

' Opinion filed March 1, 1920.

Appeal from the District Court of Bottineau County, North Dakota, Honorable *A. G. Burr*, Judge.

Order reversed.

*Geo. F. Shafer*, for appellant.

As a general rule the court will relieve a party from the effects of a judgment entered against him by default, where it appears that he has a good and sufficient meritorious defense; where there is a reasonable excuse for the delay occasioning the default; where the party acts diligently and moves promptly for relief upon receiving notice of the entry of judgment. Northern Commercial Co. v. Goldman, 37 N. D. 542; Citizens Nat. Bank v. Branden, 19 N. D. 489, 27 L.R.A.(N.S.) 858; Westrook v. Rice, 28 N. D. 328; Racine-Sattley Mfg. Co. v. Pavlicek, 21 N. D. 229.

A person who suffers a default judgment to be entered against him through an honest mistake of law, resulting in his being misled, is not any less entitled to equitable relief therefrom than he would be had the neglect been due to a mistake of fact. 23 Cyc. 932; 15 R. C. L. 160; Baxter v. Chute, 53 N. W. 379; Braseth v. Bottineau County, 13 N. D. 344; Lobe v. Bartaschawich, 37 N. D. 572.

*W. J. Cooper*, for respondent.

Mistake, to be available as an excuse, must be one of fact and not of law. 23 Cyc. 930, 932.

The vacating of a judgment entered on default rests in the sound judicial discretion of the trial court and the appellate court will not reverse the decision of this trial court in the absence of abuse of that discretion. Racine-Sattley Mfg. Co. v. Pavlicek, 21 N. D. 222.

GRACE, J. This is an appeal from an order of the district court of Bottineau county, denying defendant's application for vacating of a certain default judgment, taken against him, by plaintiff.

The material facts, as disclosed by the affidavit, in support of the application to vacate the judgment, are substantially as follows:

The plaintiff, at the time of the commencement of this action, was the wife of Peter Fylling, to whom she was married, on the 29th day of July, 1915. The defendant was a witness to the marriage ceremony.

In 1907, the defendant immigrated to this country, from Norway. In the years of 1914 and 1915, he was a resident of Bottineau county. Between the 1st day of April, 1914, and the 1st day of June of that year, he worked for plaintiff's father, Sofus Mork, upon his farm. During that time, plaintiff was unmarried, and lived at her father's home.

Shortly after the marriage, plaintiff and her husband moved to a farm near Landa, in Bottineau county, where they have since resided.

About January 1, 1916, the defendant moved to McKenzie county, where he has since resided, upon a government homestead, which is near the residence of Sofus Mork, by whom the defendant is, considerable of the time, employed.

It is claimed by plaintiff, that on or about the 1st day of January, 1914, at Bottineau county, the defendant made an indecent assault upon plaintiff, and debauched and carnally knew her. She was at that time sixteen years of age. That on the 15th day of July, 1915, in the same county, the defendant made another similar indecent assault upon her.

She claimed thereby to recover damages, in the sum of $1,000. She had judgment, by default, for $521.45.

The defendant is thirty-three years of age, and is the brother of Sofus Mork, and the uncle of plaintiff.

It appears the plaintiff never disclosed to her father, or any of her people, anything regarding the alleged indecent assault, nor did she disclose it to anyone until about the 1st day of January, 1919, when it was disclosed to Peter Fylling, if his statements, with reference thereto, in his counteraffidavit, are proper to be considered in this case. This was approximately five years after the alleged commission of the first assault.

It seems that sometime prior to February 4, 1919, Peter Fylling had written the defendant a letter, demanding money from the defendant. It seems defendant had also, at about that time, received a letter from the plaintiff, and, in referring to her letter, he said: "The last verse that was written by Marie, herself, is the most thoughtless accusation that yet has been on paper."

Defendant answered Fylling's letter on February 4th, and the tenor of the answer is a refusal to comply with the demands of plaintiff.

It appears that the plaintiff then placed the matter in the hands of W. J. Cooper, an attorney at law, at Westhope, North Dakota. He wrote the defendant a letter on January 13, 1919, notifying the defendant he had been retained by plaintiff, to represent her in her claim against defendant, for damages for the alleged unlawful assaults. He also called the attention of the defendant to the fact that "an action of this kind is most unfortunate for both parties concerned, and at my suggestion we are giving you an opportunity to adjust the matter out of court.

"I am inclosing you a copy of the papers, so that you may be advised of the action we shall bring in case of a failure to agree on a settlement of the merits. You will understand that the mailing of this paper is not a commencement of an action, but that it will be necessary to have the sheriff or some other party serve the papers upon you.

"I will be glad to wait a short time for your proposition before placing the papers in the officer's hands, for service."

It further appears, from the letter, that in order to save expense and the embarrassment, a settlement for somewhat less would be made, if made out of court.

About two weeks later, plaintiff's attorney wrote another letter, stating, in effect, that they could not permit the matter to drag, and that if they did not hear from him within ten days, they would place the papers in the hands of the sheriff for further proceedings.

On February 8th, Cooper wrote another letter to defendant, stating to him that Mr. Fylling had called upon him, and reported that the defendant had written him, that he was claiming to be innocent of the whole affair. Then followed another threat on the part of the attorney, that, if he did not hear from him, with some kind of a proposition of settlement, he would forward the papers to the sheriff for service, again giving defendant ten days' time to consider the matter.

On February 17th, the defendant wrote Cooper to the effect that he had received his letter, and would let him know that he was not guilty, and did not want to hear any more about the matter.

To this letter Cooper replied on the 20th, stating that he was sending the papers to the sheriff for service.

The next letter Cooper claims to have written the defendant was on July 2d, when he gave notice that judgment was rendered against defendant, for $500 and costs. Defendant denies receiving this letter.

The defendant was served with summons and complaint, in April, 1919. He makes affidavit, in substance, as follows: That about a week after receiving those papers, he accidentally permitted them to become rain soaked in a storm which occurred about May 1st, to which he was exposed; that he had these papers in his hip pocket, and that, as a result of such wetting, they were damaged and mutilated to such an extent, that they were unintelligible; that prior to that time he had not read them, except parts of the complaint; that he did not understand them, or that they required any formal answering by him, or that it was necessary for him to show them to a lawyer; that he understood and believed that such papers constituted only a demand on him, for money, which he could ignore the same as he had letters and demands from the plaintiff's attorney; that he understood and believed no judgment, for money, could be entered against him, without the charges made in the complaint being proved in open court, in his presence; that he had never seen suit papers before; that he believed he would receive notice of the time and place of trial, and having not received the same, understood that the matter had been dropped by the plaintiff, and that he gave it no further thought, and did not consider it seriously until the sheriff served a notice of levy on his land, on about the 9th day of August, 1919, which he claimed was the first notice he had of any judgment having been taken against him; that he immediately consulted George F. Shafer, an attorney at law, of Watford city, North Dakota, and detailed, to him, a full and complete true statement of all the facts and circumstances surrounding the transaction, who then advised and informed him, that he had a good, legal, and meritorious defense to the alleged cause of action. And defendant's affidavit further shows, that he never attended school in the United States, is not very well versed in the English language, reads it with great difficulty, and

does not understand legal terms, and did not understand the serious nature of the action until so advised by his attorney, and also states that the judgment was entered against him through mistake and excusable neglect.

The defendant, with his application and affidavit, to vacate the judgment, tendered a good and sufficient answer, in the form of a general denial of the allegations of the complaint.

The only error assigned is that of the trial court, in its order of September 23, 1919, denying the motion of defendant for the vacation of the judgment.

The question presented in this case is: Did the trial court abuse its discretion in refusing to vacate the default judgment? We think it did. We think the showing was clear that the default judgment was taken by mistake and excusable neglect of the defendant. While he, to some extent, understood the English language, it is clear that he had not a very extended knowledge of it. His letter to Fylling was written wholly in Norwegian, and his statements in his letters written in English, are interspersed, here and there, with words written in the Norwegian language, which would tend to show that he had no great knowledge of the English language.

It is also shown that he had not sufficient understanding of the English language to comprehend the meaning and legal effect of the suit papers served upon him.

We think, also, perhaps the defendant's neglect was excusable, in view of the peculiar circumstances that preceded or followed the demand by plaintiff, of defendant, for the payment to her of a sum of money as damages.

The fact that plaintiff, for about five years, said nothing to anyone in regard to an assault having been made upon her by defendant, is a circumstance which may be considered, with others which affect defendant's neglect in failing to appear and answer in the case.

It would have some tendency to support defendant's claims, that he regarded Fylling's demand on him, for money, too ridiculous to be taken seriously; that he regarded the letters, written by the attorney, as he stated, as being merely a bluff, to induce the defendant to pay over money, by threats of intention to charge him with a serious offense; that he treated the whole matter as an attempt to blackmail

him; that not being guilty of the charge, he never believed that the plaintiff would take any action in court.

If the defendant thus believed, it might be some justification and excuse for his neglect. When all of the letters are read and considered, in connection with the further fact, that at the very inception of the matter, the attorney inclosed the suit papers by mail to the defendant, there would appear to be some justification for defendant's attitude. If the purpose of inclosing the suit papers to the defendant was not to instill fear in his mind, then, what was the purpose in doing so? Certainly, such procedure is unusual and irregular. Such procedure was not intended to be the commencement of the action, as plainly appears from the letter written, with which the papers were inclosed. Such papers, and the repeated threats of procedure in court, could well be the means of confirming defendant in his theory, that the whole procedure was one to extort money from him, and be the very cause of his neglect to give timely attention to the matter, after the service, by the sheriff, of the suit papers upon him.

The attorney for the plaintiff may not have intended to deceive, mislead, or frighten defendant, but we cannot say that, on the whole record, there is no justification for defendant's neglect.

If defendant is innocent, and his claim is correct, his good name and reputation ought not to be impaired, nor his property and money taken from him, until after a fair and full trial has been had, where, within the time allowed by law, he has acted promptly, to vacate the judgment by default, which was taken against him.

In so far as his affidavit, in support of his application to vacate the judgment, deals with the merits of the case, it cannot be controverted, as to the facts therein stated, as a defense to the cause of action. It may be controverted only in such matters as relate to the cause assigned for its vacation.

Where there is a sufficient affidavit of merits, and an answer disclosing a meritorious defense, and reasonable excuse for the default, and no substantial prejudice is shown to have risen from the delay of the application to open a default judgment, we think it the better rule, that it should generally be vacated, and for these reasons, in this case, we think it was an abuse of discretion for the trial court not to vacate the judgment. Northern Commercial Co. v. Goldman, 37 N. D. 542,

164 N. W. 133; Racine Sattley Mfg. Co. v. Pavlicek, 21 N. D. 222, 130 N. W. 228.

The order appealed from is reversed, with permission to the defendant to interpose answer, within fifteen days after filing of the remittitur herein and, upon payment of the costs taxed in the judgment rendered, less appellant's costs and disbursements on this appeal.

ROBINSON and BRONSON, JJ., concur.

BIRDZELL, J., dissents.

CHRISTIANSON, Ch. J. (dissenting). Our statute provides that a district court may "in its *discretion* and upon such terms as may be just at any time within one year after notice thereof, relieve a party from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect." Comp. Laws 1913, § 7483. Of course "the party who seeks the opening or vacation of a judgment must sustain the burden of proof, and must establish his right to the relief asked by clear and satisfactory evidence." Black, Judgm. 2d ed. § 351. Whether he has established such right is primarily a matter for the trial court to determine. In making such determination that court is vested with and exercises discretionary powers. In reviewing the determination of a trial court, this court is limited to an inquiry as to whether the ruling of the trial court is so clearly wrong that that court must have abused its discretion in arriving at the result which it did.

The majority opinion makes some reference to the alleged facts in the case. Of course, on the motion to vacate the judgment, the affidavit of merits could not be controverted. It may be noted, however, that the default judgment in this case was based upon findings of fact. We have no means of knowing what evidence was introduced, but it must be presumed that it was sufficient to sustain the findings. The trial judge who made the findings also made the order refusing to vacate the default.

"The power to vacate judgments, on motion, is confined to cases in which the ground alleged is something extraneous to the action of the court or goes only to the question of the regularity of its proceedings.

It is not intended to be used as a means for the court to review or revise its own final judgments, or to correct any errors of law into which it may have fallen." Black, Judgm. 2d ed. § 329. " A motion or proceeding to vacate or set aside a judgment cannot be sustained on any grounds which might have been pleaded in defense to the action, and could have been so pleaded with proper care and diligence." Black, Judgm. 2d ed. § 330.

Was the default judgment taken against defendant through his mistake or excusable neglect? Did he establish this so clearly that this court can say, as a matter of law, upon the record before it, that the trial court abused its discretion in refusing to vacate the judgment? Unless both of these questions can be answered in the affirmative the order appealed from should be affirmed.

It appears that plaintiff's husband wrote a letter to defendant in regard to the alleged wrong which constitutes the basis of plaintiff's action. On January 13, 1919, plaintiff's attorney wrote a letter to the defendant, wherein, after stating that he had been retained by the plaintiff, he said: "It is her wish that an action be brought against you for the damage she has sustained. An action of this kind is most unfortunate for both parties concerned and at my suggestion we are giving you an opportunity to adjust the matter out of court. I am inclosing a copy of the papers so that you may be advised of the action we shall bring in case of a failure to agree on a settlement of the matter. You will understand that these papers are not a commencement of an action but that it will be necessary to have the sheriff or some other party serve the papers upon you. I will be glad to wait a short time for your propositon before placing the papers in the officers' hands for service." This letter was sent by registered mail, and it is admitted that the letter was received by the defendant.

On January 29, 1919, plaintiff's attorney again wrote defendant as follows:

### In Re Fylling v. Mork.

It is now over two weeks since I wrote you regarding this matter but have heard nothing from you. We cannot permit this matter to drag, and unless I hear from you within ten days I will proceed to place the papers in the Sheriff's hands for further proceedings.

On February 4, 1919, defendant wrote a letter to plaintiff's husband. Reference has been made to this letter in the majority opinion. In such letter the defendant said: "I have received a letter from Mr. Cooper."

On February 8, 1919, plaintiff's attorney wrote defendant as follows:

"Mr. Fylling called on me today and reported that you had written him and that you were claiming to be innocent of the whole affair. Now, Mr. Mork, if you can convince the jury that you are innocent, then, of course, in theory of law you are, but your protestations that you are so innocent will not prevent the matter being tried out in court. I have the papers drawn and am arranging to send them to the sheriff for service. Unless I hear from you with some kind of a proposition of settlement I will forward the papers for service on the 18th of this month. Ten days should give you sufficient time to consider the matter and make your decision known to us."

To this letter defendant replied as follows:

Arnegard, N. D. Feb. 17.

Mr. W. J. Cooper,
    Westhope, N. D.
Dear Sir:

Recevd jour letter today, and will let jou know that I am not gilty, and I don't want to hear any more about this. So if Mr. Filling wants to do anything good for his wife hi hase to trye the ones there is gilty—an the jury will gett the rest of the story, if nidet (needed).

Jours very truly,<br>Ole Mork<br>Arnegard.

(The foregoing is a literal copy of the letter).

To this letter plaintiff's attorney sent the following reply, dated February 20th, 1919:

In Re Fylling v. Mork.

Your letter of the 17th with reference to this matter has been

received. From the attitude you are taking it is evident that the only thing left to do is to send the papers to the sheriff for service. This we are doing. You are making a serious mistake but you must decide.

In his counter-affidavit defendant admits that he received these different letters.

The record shows, and the defendant admits, that the sheriff of McKenzie county (where defendant was residing) served the summons and complaint in the action upon the defendant on April 24, 1919. Judgment was entered June 4, 1919.

Plaintiff's attorney makes affidavit that on July 2, 1919, he sent the following letter to the defendant:

In Re Marie Fylling v. you.

Judgment was rendered against you in the sum of $500 and costs, amounting in all to the sum of $522.45 and interest at 6 per cent from June 4th. I am today ordering execution but before putting any more expense by making a levy on the land, wish to write you to inquire whether or not you wish to make a settlement. If I do not hear from you by early mail I will assume you do not intend to do anything in the matter and will proceed to sell your farm.

It is true, as stated in the majority opinion, defendant in his affidavit states that he did not receive this letter. But the affidavit of plainiff's attorney shows that the letter was sent in an envelope with a return card on, and that it was never returned.

The majority opinion refers to the defendant's lack of knowledge of English. It is true the letter which he wrote in English to plaintiff's counsel contains some misspelled words, but as a whole the letter discloses a fair understanding of the English language. The letters which the defendant wrote to plaintiff's husband are contained in the record. These letters were written in the Norwegian language. These letters are well composed and written in a good hand, and it would appear that the defendant is a man of at least fair intelligence and some education. This was also the view of the trial court.

In denying defendant's application the trial court filed a memorandum decision, from which I quote:

"The gist of defendant's claim or appeal to the court's discretion is that though he was duly served with the 'suit papers in this action' the same were rain-soaked about a week after the service so that they could not be read and that he had only read parts of the complaint prior thereto. Further, he claims 'he did not understand the papers to be suit papers' that he believed he could ignore the same as he had done the letters from the plaintiff's attorney; that he understood and believed no judgment could be rendered against him without the charges being proved in open court in his presence and not receiving any notice of any time or place of trial he supposed the matter was dropped and gave it no further thought. He further says that the first notice he had of any judgment was when the sheriff served a notice of levy on his land on or about August 9, 1919. It is a significant fact that defendant does not furnish to this court the papers which he claims to have been so 'rain-soaked' that they are unintelligible. He does not claim they are lost or mislaid, nor does he show them to the court for us to determine whether they are intelligible. In any event, he had them at least a week and does admit he read portions of the complaint. The complaint is short, not having to exceed two folios in the body thereof, and if he had read 'parts of the complaint' he must have read most of it. He claims he reads the English 'language with great difficulty;' but he used very good English and writes well in the English language. If exhibit 'F' of plaintiff's rebutting affidavits be the production of the defendant, in his counter affidavit, he practically admits writing it and this court is inclined to believe it is, the defendant understands the English very well, and two months before the service of the papers was in correspondence with the attorney for the plaintiff. . . . It must be clear that defendant, when he was served with the summons and complaint, knew perfectly well the nature of the claim against him. He says the 'first notice that he had of any judgment having been taken against him' was when 'the sheriff served the notice of levy on his land on or about the 9th day of August, 1919.' The plaintiff shows by exhibit 'H' that defendant was notified on July 2, 1919 that judgment was rendered against him and the amount and date of the judgment—June 4th. The affidavit of Mr. Cooper shows the mailing of this letter in an envelope with a return card, and that the letter was never returned. This court is inclined to believe that

this is correct, though the defendant denies getting it. He must have received it. And when we look over the correspondence and notice the dates of the letters it is evident that defendant would have received this letter and notice about the 5th of July. The court is inclined to be somewhat suspicious of the claims of defendant, because of the inconsistency between the proposed answer and the affidavit of merits and both of these instruments are verified by the defendant himself. The complaint alleges that plaintiff was an unmarried woman at the time of the alleged assault and the defendant in his answer denies this and verifies the denial positively, yet, in his affidavit of merits he admits she was unmarried until July 29, 1915, and that he 'was one of the witnesses to such marriage ceremony.'

"The basis for the application to remove the default is 'mistake and excusable neglect.' This is not a case where the blame can be placed upon the attorney; but the neglect is the neglect of the defendant. Judgment was not entered until about six weeks after the service of the summons; the defendant for five months, at least, knew of the charge and had received two sets of the 'papers' in the case. It was not until about three weeks after the sheriff notified him of the levy on his land that he served any notice of motion to reopen the case and this was between eight and nine weeks after he had received the notice from the attorney that judgment had been entered and almost three months from the time of the entry of judgment. He cannot blame his attorney for the notice of motion is dated just four days prior to the date of the service and it would take almost that length of time to get the notice from McKenzie county to Bottineau county. In Hunt v. Swenson, 15 N. D. 512, 108 N. W. 41, an order vacating a default judgment under circumstances similar to this, but more favorable to the defendant, was reversed by the supreme court. In the case cited judgment by default was not entered until after sixty days from the service of the summons, but the execution was issued eight days after the entry of the judgment and a month after the execution levy the defendant moved to vacate. They had consulted one whom they supposed to be a lawyer, paid him a retainer and relied upon his attention to the case. True, there was a dispute as to their agreement with their attorney; but here there was no dispute, no hiring of counsel, no attempt to answer, and no misunderstanding of the nature of the case.

"In Bazal v. St. Stanislaus Church, 21 N. D. 602, 132 N. W. 212, the officers of the defendant Church received the summons and complaint, put them in their pockets and either forgot about them or considered there was no hurry, or misunderstood the necessity for prompt action. Immediately upon learning of the entry of judgment they took steps to open the judgment, but the same were delayed from time to time on account of the necessity of having a meeting of the board. The affidavits showed the priest and officers knew of the nature of the action, or claim, though the priest said he understood English imperfectly and could only speak, read, and write it to a slight extent. The trial court vacated the judgment but the supreme court reversed the order saying 'If we sustain the order vacating it [the judgment] it will furnish a predecent for vacating any default judgment entered, when the only excuse is that the defendant knowingly permits judgment to be taken because it is more convenient to do so than to give it the necessary attention.' Mr. Cooper, the attorney for the plaintiff, took all possible precautions to give the defendant notice. He told him he was going to bring the suit and sent him a copy of the papers that would be issued. He notified him of the probable time the sheriff would serve them; he waited six weeks after the service before he entered judgment; almost a month thereafter he notified him of the amount of the judgment and the date, and it is not until the time the defendant sees he will have to pay that he moves to reopen. If such careful proceedings on the part of the counsel cannot be relied upon to sustain a judgment then it is useless to make rules for the vacation of judgments and there would be no finality. When we consider the defendant reads and writes English; that he shows familiarity with the language; that he admits having read parts of the complaint; that he never consulted counsel; made no attempt to answer or appear, and that no fraud was practiced on him, on the contrary he was fully and completely notified; that he defied the parties to sue, in effect, and told them he didn't want to hear any more about the case and nowhere specifically denies, in the correspondence, that he is guilty, I cannot see where there was mistake or execusable neglect. In the case of Kjetland v. Pederson, 20 S. D. 58, 104 N. W. 677, the summons was regularly served and defendant read it. No complaint was filed until afterwards, the defendant neglected to consult counsel, answer or appear; the case is regularly tried and

verdict rendered; no fraud was practised on the defendant nor any attempt to deceive him, though plaintiff's attorney told defendant he could give him no information in regard to the case. The supreme court held that an order refusing to vacate the judgment is good and affirmed the same. Here the facts are quite similar but the attorney for the plaintiff was much kinder and gave him full notice that the action would be brought, what would be done, the steps that were taken and the amount of the judgment entered. The defendant cannot be mistaken. He knew what the case was about. His neglect cannot be excused because there is no excuse for it, and if this default judgment were to be opened then there is no use in taking a judgment by default."

The memorandum decision shows that the trial judge carefully considered the facts and circumstances bearing upon the question of mistake and excusable neglect; and that he applied to those facts the legal principles announced in the decisions of this court. Clearly the trial judge did not exercise any capricious or arbitrary discretion; but he decided the matter before him "according to his judgment of what was fair, equitable, and wholesome, as determined by the peculiar circumstances of the case, and as discerned by his personal wisdom and experience, guided by the spirit, principles, and analogies of the law." In my opinion there is no good reason for saying that the trial court abused its discretion. The order appealed from should be affirmed.

BIRDZELL, J., concurs.