[File No. 6891.]

MARY BOTHUM, Respondent, v. ANDREW BOTHUM, Appellant.

(10 NW(2d) 603)

Opinion filed August 6, 1943.

*F. T. Cuthbert,* for appellant.

*Kehoe & Kehoe,* for respondent.

*Burr*, J. This is an appeal from an order denying a motion to vacate and set aside the judgment and decree of divorce entered April 27, 1942. There is no return showing service of the summons and the complaint upon the defendant, nor any admission of service as provided for in § 7436, Comp. Laws; but the record discloses he received copies on April 2, 1942, and the originals were filed in court on April 28, 1942.

The complaint charges cruel and inhuman treatment and grievous mental suffering. The plaintiff asks for a divorce from the defendant, for the custody and control of the minor child, and such "further relief as to the Court seems just and equitable."

On April 21, 1942, the court heard the case on the merits in chambers in Devils Lake and granted a decree of divorce giving to the plaintiff the custody of the child, and the property upon the condition that the plaintiff pay the defendant the sum of $1,000—paying $300 in cash and retaining the remainder for herself for the care and support of the child.

On May 15, 1942, the defendant moved the court to vacate and set aside the judgment, basing the motion upon his affidavit and a proposed verified answer. A hearing was had on June 16. On December 22, 1942, the court denied the motion, holding that "the judgment and decree heretofore entered in said matter stand and be in full force and effect." From the order the defendant appeals.

The affidavit of defendant sets forth that he is 56 years of age, was never married until his marriage with the plaintiff in April, 1933; that his wife had been previously married, and during that time had accumulated property; and he showed what he had done to preserve this. He states he "was born in this country of Norwegian parentage, that he learned to read some and to write poorly, and that his business experience has consisted merely of farming and working on farms." He "has had no experience in court procedure or any connection with any legal problems; that he was never even so much as in a courtroom to hear the trial of a cause; that he did not understand the nature of these proceedings, excepting this: that the plaintiff was desirous of obtaining a divorce and wanted a property settlement."

He states further that after the service of the summons and com-

plaint he and his wife went to the office of her attorneys on April 2, 1942, "and had some talk in which he understood that he was to go down to Devils Lake on the 21st day of April, 1942, and get a settlement of their property matters; that nothing was said to him about any divorce action, or any trial." He further states that plaintiff's counsel on the 2d day of April, 1942, handed him some papers and these were the only papers that he recalls were ever served upon him and "that he has not sufficient education to correctly read and understand the allegations of either the complaint or the summons, but thought at all times that the same related to a settlement of property." The record shows a stipulation in writing, signed by the plaintiff and by the defendant, as follows: "It is hereby stipulated and agreed by and between the parties hereto that the above entitled action for divorce and adjustment of property interests may be brought on for trial before Hon. C. W. Buttz, one of the judges of said Court, at his Chambers in the Journal Building in Devils Lake, Ramsey County, North Dakota, at one o'clock in the afternoon of the 21st of April, 1942, and each of us hereby appears in said action."

In his affidavit he states he started on the morning of the 21st to go to Devils Lake; that he had car trouble and did not reach Devils Lake until 3:20 P. M.; that he went to the chambers of the court and there was no one present except the judge and plaintiff's counsel; that defendant was then informed the matter was determined and he would be allowed three hundred dollars ($300). He then sets forth how he met his wife on the street and they "went up to the chambers and he was again told that the matter was all settled and judgment was to be entered in which he would be allowed three hundred dollars ($300)." In his affidavit, he says he "did not understand then anything about the divorce action and still assumed it was a property settlement." He states he returned home, consulted a lawyer in Cando who advised him he was not in position to take his case and suggested defendant employ his present counsel; that this counsel "has advised him that under the circumstances he is entitled to have such judgment vacated and set aside and that he be permitted to defend said action."

The proposed answer denies the allegations of cruelty made by his wife, sets forth an action for divorce, asks for a fair division of the

property or at least $2,000 in cash, that he be granted a divorce, and the custody of the child.

The only rebutting affidavit is that of the wife. A goodly portion of her affidavit is taken up with a discussion of the merits of the case. On an application to vacate a judgment the merits of the defense to the action cannot be attacked by affidavits. This portion of the affidavit must stand or fall upon its own sufficiency. This has been the rule of this jurisdiction from the first. The matter is discussed and the rule set forth in Minnesota Thresher Mfg. Co. v. Holz, 10 ND 16, 23, 84 NW 581. In Racine-Sattley Mfg. Co. v. Pavlicek, 21 ND 222, 130 NW 228, the rule is stated succinctly, "The affidavit of merits cannot be controverted except as to matters therein stated other than that constituting the merits of the proposed defense." Hence, the only portions of the rebutting affidavit we consider are those which deal with the showing of excusable negligence or inadvertence.

In plaintiff's affidavit she sets forth that the hearing in the divorce proceeding came on before the court on April 21, 1942; that the court waited for the defendant for some time, and, concluding he would not appear, proceeded with the trial; "that sometime after the conclusion of the trial the defendant appeared and that upon his appearance, the court and the plaintiff and the defendant again went over the matter fully as to the merits of the application of the plaintiff for a divorce and as to the property rights of the parties; that at such time the defendant stated in court that he had no objection to the proceedings of the court in so far as granting the plaintiff a divorce and did not desire to contest the right of the plaintiff to a divorce but that a dispute arose as to the property rights of the parties."

These two affidavits are the only affidavits presented to the court on the hearing of this motion to vacate the judgment. The only records we have before us, other than the moving papers, are the findings of fact and the judgment and decree of divorce together with the memorandum decision of the court and the order denying the motion.

The findings say nothing about service of papers, waiver of time or right to answer, and make no reference to the stipulation other than the introduction states: "The above entitled action having come on for hearing before the Court at its Chambers in Devils Lake, North Dakota,

the Hon. C. W. Buttz presiding, and the defendant and the plaintiff appearing in person and the Court being duly advised in the premises, makes the following: Findings of Fact."

The defendant sets forth that he did not know what was the purport of this stipulation which he signed; that he supposed at all times it had reference merely to a property settlement. Nowhere is it shown it was read to him or explained to him. He makes the same allegations with reference to the proceedings in the chambers of the court.

In the memorandum decision, dated November 10, 1942, the court states from his recollection that he heard the matter on April 21, 1942, the defendant not being present; that when the defendant did appear at the chambers, "the plaintiff, her witnesses, and attorneys were called back into the courtroom by the court, the case reopened, and the hearing continued." The court states: "I suggested to the defendant that he secure counsel to represent him but he failed to do so, seeming to feel quite competent to present his own case, which, as a matter of fact, he did very well." The court shows in his memorandum opinion that there was a great deal of bitterness exhibited by the parties and the matter was almost entirely in consideration of the property settlement. The court says in its memorandum decision, "The defendant said that he had no objection to a divorce, and, in fact, was of the opinion that a divorce was best for all concerned in the circumstances inasmuch as he was no longer able to peacefully or satisfactorily live in the home of the plaintiff." The court sets forth that this is indicated "in the record dictated to the court reporter at the close of this informal hearing." This record taken by the court reporter is not before us, and there is nothing to show the defendant was sworn as a witness. In fact, the court states: "This subsequent and final portion of the hearing was very largely informal and partook of the nature of a round table proceeding."

The statements made in the memorandum opinion of the court are not evidence, but they are of value as indicating the attitude of the trial court and the matters considered before the order appealed from was made. They are as recollected more than six months after the hearing, but they throw light upon the reasons for denying the motion. The defendant was not in default at the time the testimony was taken

and the decree of divorce was entered. The time for answer had not expired. In the memorandum decision, the court states, regarding this feature: "Let us go back to the day of the trial of this case on April 21st, 1942. In defendant's affidavit some suggestion was made that he was not yet in default because the time for answering had not yet expired. There isn't anything particularly heavy in this argument for the reason that it was agreed by the parties that the hearing of the trial be had on that day and each of the parties endeavored to appear,— the plaintiff and her attorney being on time, the defendant not appearing until an hour or two after the trial was had but, as the record discloses, when he did appear the plaintiff, her witnesses and attorney were called back into the Courtroom by the Court, the case reopened and the hearing continued."

. This brings us to a consideration of the stipulation. The defendant is emphatic that he did not understand the nature of that stipulation; that he supposed it dealt only with the question of property and that the hearing before the court was to be for the purpose of determining the property question. Did he intend there should be a trial on the merits of April 21? His claim is contrary to such idea. He and his wife went to her attorneys' office, apparently to make an agreement as to property. As far as the record is concerned, no papers had been served on him up to that time. He received the papers then and almost immediately thereafter signed the stipulation. He and his wife could not agree on the property question and his theory seems to be that he was willing to discuss the matter of property before the judge and that he and his wife would appear before the judge on the 21st for this purpose. The decision reached on the division of property was not satisfactory and so he consulted an attorney who sent him to another lawyer and then the proceedings to vacate the judgment took place. There is no contradiction of his claim that the matter considered by him was a property settlement other than is set forth in the memorandum opinion and in the affidavit of the plaintiff.

The testimony taken is not before us; there is nothing to show that the defendant was sworn as a witness; no answer had been interposed. The defendant had a right to waive service of papers. If he intentionally waived such service it should be shown definitely. There is a state-

ment in the stipulation to the effect that both parties and "each of us hereby appears in such action." That may be held as sufficient waiver of the service of summons and complaint, but he did not waive the right to answer. Defendant does not attack the jurisdiction of the court, but this situation should be considered in determining what he understood when he signed the stipulation.

Assuming that the court's recollection of the situation is correct and that when the defendant appeared in chambers on April 21 the court considered this an appearance in the entire case, it seems clear that the defendant did not so consider it and though the stipulation had been signed on April 2, it was not filed in court until April 28. The court's memorandum opinion undoubtedly sets forth the view the court honestly entertained and there may have been something said by the defendant which indicated he was more concerned in a property settlement than he was in the divorce, for in his answer he asks for a divorce. His motion to vacate the judgment is not a concession that he had consented to a trial on the merits on April 21.

The motion to vacate the judgment was addressed to the sound discretion of the trial court. Westbrook v. Rice, 28 ND 324, 148 NW 827; Boyd v. Lemmon, 49 ND 64, 189 NW 681; Smith v. Smith, 71 ND 110, 299 NW 693. The first two cases cited show a reversal of an order refusing to vacate a judgment because of the mistake or excusable neglect of the defendant. The case at bar is peculiar in the question of "default." A defendant is not in "default" until the time to answer has expired. This would not be until March 2. The stipulation does not contain any waiver of service of papers, of time to answer, or of any other right, though it does purport to shorten time for hearing on the merits.

The defendant was present in court after the matter was reopened and before the findings were signed. He was there to discuss at least some features of the trouble between him and his wife. Not only was the hearing conducted in an "informal" way as the memorandum opinion states, but the initiation of the matter, the service of the papers— in fact, the whole proceedings—were informal.

There is some analogy between the facts of this case and those of Fylling v. Mork, 45 ND 119, 176 NW 914, 916, with reference to the

defendant's knowledge of English and whether he had "sufficient understanding of the English language to comprehend the meaning and legal effect of the suit papers served upon him." There is nothing in the record showing that before the parties met in the office of plaintiff's counsel they had reached any agreement to the effect a divorce was necessary, though it is fair to assume that matter had been discussed. The parties might have contemplated a mere separation and a division of property. There is no showing in this respect to contradict the defendant.

The proceedings involve a matter of great interest to the state—a divorce proceeding. When we consider the manner of service of the summons and complaint, the paucity of the record, the alleged understanding of the defendant, the shortness of time, the condition and caliber of the defendant, all the other facts in this case, it is the decision of this court that the judgment should be vacated and set aside, the answer stand, and the case heard upon its merits in an orderly manner. The order refusing to vacate the judgment is reversed.

MORRIS, Ch. J., and CHRISTIANSON, BURKE and NUESSLE, JJ., concur.